ALBANY,<br>Feb. 1826.<br><br>Doe<br>v.<br>Thompson.

---

DOE, *ex dem.* ARDEN and others, *against* THOMPSON.

THE SAME *against* PARKER and others.

THESE actions were ejectment, for land, in the eighth ward of the city of New York; tried at the New York circuit, March 25th, 1825, before BETTS, C. Judge.

Verdicts were taken for the plaintiff, upon the third count of the declaration in each cause; which was on the demise of Rachael Arden only.  This was pursuant to the decision of the Circuit Judge upon various points, to which the counsel for the defendant excepted; and the causes now came before the court upon a case and bill of exceptions, and affidavits of newly discovered testimony.  For every material purpose, the acts are sufficiently stated in the opinion of the court.

It is a rule of construction as to the description of premises in a deed, that what is most material and most certain, shall control that which is less material and less certain.

Courses and distances yield to natural, visible and ascertained objects.

Though an agreement by parol, as to locating or bounding land under a deed, will, *it seems,* bind the parties; yet the agreement of the remainderman shall not control the owner of the particular estate, unless the former act by the authority of the latter.

To constitute a disseisin, upon which a descent may be cast, so as to toll the right of entry, it must be commenced by wrong, and founded in an ouster of the true owner.  There must be a disseisin in fact; and the rightful owner must have been expelled, either by violence, or by some act which the law regards as equivalent in its effects.

A mere entry upon another is no disseisin, unless it be accompanied with expulsion.

An estate by disseisin is an estate gained by wrong and injury; and herein it differs from dispossession, which may be by right or wrong.

To establish a disseisin, the party must show a tortious seisin affirmatively.

Entering on land apparently vacant, and enclosing it with a fence, will not, *per se,* furnish a presumption of wrong, so as to make out a disseisin.

*A. Burr*, for the defendants, cited 1 Ph. Ev. 74, 5 ; *Rex* v. *Hardwick*, 11 East, 578 ; *Brandt* v. *Cline*, 1 Ph. Ev. 126, 129, note (*a*) 8th paragraph ; *Jackson* v. *Demarest*, 2 Caines Rep. 382 ; 1 R. L. 186, s. 4.

*J. Anthon*, contra, cited 2 Mass. Rep. 380 ; 6 id. 131 ; 11 id. 193 ; 12 id. 469 ; Dy. 80 ; Shep. Touch. 100, 248 ; Com. Dig. Fait, 163 ; 1 Caines' Rep. 493 ; 2 John. Rep. 37 ; 15 id. 471 ; 18 id. 81 ; 5 East's Rep. 59, 79, 80 ; John. Dig. 348, New Trial, and the cases there cited ; 6 John. Rep. 197 ; 8 id. 489.

*Curia*, per WOODWORTH, J.   The plaintiffs gave in evidence, a deed from Aaron Burr to Jacob I. Arden, dated 18th August, 1797, for twenty three lots of ground, distinguished on a map annexed, by certain numbers.   Seven of the lots bounded southerly by Arden street, northerly by land belonging to Aaron Burr ; easterly by Bedford street ; and westerly by the division line of land belonging to the corporation of Trinity church ; each lot being 25 feet in front and rear, and 100 feet long, except lot 23, being one of the seven, which was less.   The other sixteen lots are described as lying in a block, adjoining each other, bounded southerly by Burton street ; easterly by Bedford street ; northerly by Arden street ; and westerly by the said division line ; each lot being 25 feet in front and rear, and 90 feet long, except No. 24 and 71, which were less.

It was admitted that Burr was seised of the premises when he conveyed.   Arden devised the lots to his wife during her widowhood, remainder to his son Jacob S. Arden.   The declaration contained demises from both.   The plaintiff proved that James Slater, 22 or 23 years ago, occupied the premises in question, as a pasture, under Rachel Arden.

The defendant proved that Joseph Watkins, upwards of 17 years ago, caused a fence to be made enclosing the premises in question.   It has continued in fence since ; that Loss, a surveyor, measured the ground, and pointed out the line where the fence was put ; that Arden, the remainderman, was present a great part of the time, when the fence

erected. He assisted in measuring the ground, and fencing the line of division. Watkins died May 19, 1817. His son John died March 13, 1823; and Joseph, on the 20th September, 1823.

The facts in the second cause are the same; excepting that Watkins erected a house on the premises in the possession of the defendants in the last cause, in 1817.

It will be perceived, that although the deed gives the number of the lots, and their length and breadth, it is an estimate merely, founded on a calculation, that twenty-three lots of the dimensions given, would include all the land between Bedford street and the division line of Trinity church. They were probably so laid down by the surveyor who made the map. It is now ascertained, that the lots, as described, do not include all the land. The defendant contends, that the plaintiff is restricted to the number of feet and inches. The construction to be given to the deed will not support this objection; because the whole parcel granted is expressly stated to be bounded westerly by the division line of Trinity church. It was a visible line. A fence was, at that time, erected on it. This line has never been changed; it is a known line; and has been recognized by both parties. The present fence stands as in 1770. It is evident the parties intended the church line as a boundary; for the deed is express. It was, undoubtedly, believed that there would be no surplus, after measuring off the 23 lots; but whatever may have been the intent of the parties, it must be collected from the deed.

The rule of construction is this: what is most material and most certain, shall control that which is less material and less certain. Courses and distances yield to natural and ascertained objects. (1 Cowen, 605.) In the present case, it can scarcely be said that the question is presented, whether the corporation line shall control the number of feet. If it is then according to the course of decisions, the line would control on the ground of being a known, visible, ascertained object. Here the number of feet is merely an inference, incorrectly drawn from the premises. It is like the case of a single lot, where courses and distances, or natural objects

are given, and then saying "containing 100 acres." If the boundaries contain more, it passes; if less, the grantor is not liable for the deficiency. The following are authorities to establish the doctrine : 1 Caines, 493 ; 2 John. 37 ; 15 John. 471 ; 18 John. 81 ; 2 Mass. Rep. 380; 6 Mass. Rep. 131 ; 11 Mass. Rep. 193 ; 1 Cowen, 612.

It does not appear, that Mrs. Arden had any knowledge of the enclosure made by Watkins ; or that Jacob S. Arden acted as her agent in making the measurement, before the fence was erected. Without proof, the law will not presume that he acted with her privity or consent. She had an estate for life, which could not be affected by any act of the remainderman. In the case of *Jackson ex dem. Hunt*, v. *Luqure*, (5 Cowen, 221,) it was held, that the tenant for life could not bind those in remainder. In this case, it does not appear that Watkins had any title ; for aught that appears, he was an intruder; and cannot avail himself of the rule, which applies where the owners of adjoining lands, not knowing their exact boundaries, agree upon a common division line. In such cases, neither of them will be allowed to question it.

It is further urged, that here was a disseisin, and descent cast, which tolled the right of entry. It has been decided in our courts, that, to constitute a disseisin, upon which a descent may be cast, it must be commenced by wrong, and founded on an ouster of the true owner. There must be a disseisin in fact. The rightful owner must have been expelled, either by violence or by some act which the law regards as equivalent in its effects. A mere entry upon another is no disseisin, unless it be accompanied with expulsion. Disseisin is an estate gained by wrong and injury ; and therein it differs from dispossession, which may be by right or wrong. The defendant was bound to show this tortious seisin affirmatively ; which he has not done. Watkins enclosed the premises by a fence about 20 years ago, without opposition or objection. Arden, the remainder man, was present. His acquiescence may be inferred from his acts. Eldridge, the defendant's witness, says he did not discover any old fence, when he put up Watkins' fence. It may have been pulled up. He saw the nursery fence only. From this it appears

ALBANY,
Feb. 1826.

Doe
v.
Thompson.

that Watkins made a peaceable entry on land apparently vacant; which furnishes no presumption of wrong. The law on this point is fully recognized in *Smith* v. *Burtis*, (6 John. 197.)

The verdict was taken on the count on the demise of Rachel Arden. There was no community of interest between her and the other lessors; and consequently, their admissions or acts are not within the rule which allows the declarations of one among several plaintiffs, to be received as a competent testimony against the residue.

The defendant also moves for a new trial, on the ground of newly discovered testimony. Slater, a witness for the plaintiff among other things, testified that he was employed by Rachel Arden to dig sods on the premises, &c.; that he dug close to the church line; that there was a sort of a post and rail fence, a part of which was down. It was a ridge where he dug. The evidence produced since the trial goes to disprove some of the facts related by Slater. The plaintiff has presented a number of depositions to support his testimony. There seems to be no necessity for passing on this point. The view taken shows that Slater's evidence may be dispensed with altogether. The deed to Arden conveyed the title to the premises. It is not pretended there was an adverse possession at the time; and if not, the possession continued in him, who had title, until the adverse possession commenced by Watkins, which is less than 20 years. It was not necessary for Arden to have actually entered on the premises as related by Slater. He had a legal possession without it; the land not being occupied.

On the whole I am of opinion that the motion for a new trial be denied.

Motion denied.