HYATT R. ADAMS, Respondent, v. WALTER WARNER and Others, Appellants.

Third Department, May 8, 1924.

Trespass — action to recover damages for cutting timber on uninclosed land — plaintiff failed to prove paper title or title by adverse possession — burden is on plaintiff to show that he owned land — doctrine of practical location of boundary line not applicable in absence of evidence that line was disputed or uncertain and mutual settlement thereof— surveys made by third person and by plaintiff without acquiescence of adjoining owner are immaterial — estoppel cannot be invoked.

In an action to recover damages for an alleged trespass on plaintiff's land, which trespass consisted of cutting down and otherwise injuring timber on uninclosed land by the defendant, the lessee of adjoining land, the plaintiff, who had the burden of showing that he owned the land in question, failed to prove a chain of paper title sufficient even to show presumptive title to the unoccupied land under section 335 of the Civil Practice Act, and he also failed to show title by adverse

possession, since in this respect he did not show any acts of dominion over the land in dispute other than that he had an *ex parte* survey made prior to his purchase of the property claimed by him, and the only evidence of any acts of dominion by his predecessors was that of a survey made more than fifty years ago by a person who purchased the adjoining lot.

The doctrine of the practical location of the boundary line between the plaintiff's land and that of the defendants' lessor is not applicable in this case, since there is no evidence that there ever was a dispute as to the boundary line before the present action or that it was recognized by prior owners as being uncertain, and it was not shown that there had been a mutual settlement of a disputed boundary line, but the only evidence in this respect was the *ex parte* surveys. Furthermore, an actual survey of the land will determine absolutely the exact location of the boundary and hence the doctrine of estoppel cannot be invoked.

APPEAL by the defendants, Walter Warner and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Chenango on the 13th day of October, 1923, upon the verdict of a jury, and also from an order denying the defendants' motion for a new trial made upon the minutes.

*Arthur J. Ruland* [*Charles H. Burnett* of counsel], for the appellants.

*Robert S. Parsons,* for the respondent.

HINMAN, J.:

This action was brought by Hyatt Adams, the plaintiff, for wrongful entry upon the plaintiff's premises by the defendant Walter Warner and his employees and for cutting down and otherwise injuring some of the timber thereon. The defendant Warner claims to have had a lease covering the premises in dispute, obtained from the owner of premises immediately adjoining, with the right under that lease to cut and remove timber. The real issue is that of a disputed boundary line. The lands in question were unimproved timber lands which were uninclosed by fence or otherwise. The plaintiff failed to prove a chain of paper title, even for thirty years, now sufficient to show a presumptive title to such unoccupied lands. (Civ. Prac. Act, § 335.) The plaintiff also failed to show title founded upon actual possession. "A person cannot acquire title to an uninclosed, unoccupied, unimproved parcel of land by taking a deed thereof from one not the owner, and then merely going upon the land and there asserting his ownership; nor can he acquire the title by taking such a deed and then making an occasional foray upon the land for grass or sand, and thus committing trespass against the real owner." (*Price* v. *Brown,* 101 N. Y. 669, 671.) It is not the law that one can take a deed of uninclosed woodland from one not shown to own it and then enter and take wood from the land once or occasionally and thus acquire a suffi-

cient possession to maintain an action of trespass against any other person subsequently doing the same acts upon the same lands. (*Miller* v. *Long Island R. R. Co.*, 71 N. Y. 380, 385.) The plaintiff failed to show any acts of dominion over the lands in dispute other than that he had had an *ex parte* survey made just prior to his purchase in 1911 of the property claimed by him. He admits it was second growth timber land unfenced on any side and it is conceded that there was nothing but such uninclosed timber lands stretching unbrokenly to the north, south and east of the disputed area. The north boundary of the plaintiff's lands is the boundary in dispute. The plaintiff failed to prove that he had utilized this timber land for any purpose during the whole period of his ownership, unless certain vague testimony may be deemed to relate to an isolated cutting of timber several years before by someone other than himself, but even such cutting was not identified as done upon any portion of the disputed area. There was no proof of any acts of dominion by any of the plaintiff's predecessors in title in relation to the disputed premises. The most that the plaintiff proved in this respect was a survey made in 1868 or 1869 to determine the boundaries of a lot adjoining the plaintiff's lands on the south, at a time when a certain person, who was not one of the plaintiff's predecessors in title, had the survey made in purchasing such lot to the south. The plaintiff relies upon certain corners established at that time, which marked the boundary line between the southerly side of plaintiff's land and the lot south of it, one of which corners was a hemlock tree, which the plaintiff now relies upon as fixing the southwest corner of his premises. Various witnesses were called by the plaintiff to show that this hemlock tree is still standing and that computing measurements from that tree the lands described in the plaintiff's deed have been located on the ground in conformity with his claim as to the location of the disputed northerly line of his premises. These witnesses testify to certain stakes and stones at other corners and to blazed trees between corners tending to show that the plaintiff's premises have been to that extent marked out on the ground for many years.

The evidence given by the defendants, however, as to the title of their lessor is at least equally significant. The parties both agree as to the starting point mentioned in the description of plaintiff's lands in plaintiff's deed. The northeast corner of the plaintiff's lands as so described was as certain as a mathematical problem. It was eighteen chains and fifty-nine links along a given line from the conceded starting point. It had only to be measured. The evidence of the plaintiff and his witnesses on this point was most unsatisfactory and involved damaging admissions as to his

having set a new stake marking a corner of another piece of land bought by him, immediately north of the defendants' premises, the setting of which new stake tended to confirm the defendants' theory of the location of the disputed boundary line. Moreover the defendants' witnesses, including a competent surveyor who spent four days in making a careful survey on the ground, testify to a boundary line which was also confirmed by several blazed trees. It was the burden of the plaintiff to identify the land described in his deed with that involved in the suit, to locate his description on the ground.

The plaintiff has failed to meet the burden of proof unless there is proof enough in the case to permit the jury to find a practical location of the disputed boundary line in conformity with the plaintiff's contention, and long acquiescence in that line. The court charged the jury as follows: " I charge you so as a matter of law, that if there had been a practical location of the line between the plaintiff and the premises leased by Warner, and that the owners and occupants of said lots and lands had respectively occupied the same and recognized the boundary line for a period of over 20 years, and in this case it appears to be over 50 years, before the commission of the alleged trespass, the jury must find a verdict for the plaintiff."

The doctrine of practical location was originally derived from a long acquiescence by the parties in a line known and understood between them, for such a period of time as to be identical with " time immemorial " or " time out of memory." Practical location of a boundary line, to be effectual, " must be an act of the parties, either express or implied; and it must be mutual, so that both parties are equally affected by it. It must be definitely and equally known, understood and settled. If unknown, uncertain, or disputed, it cannot be a line practically located." (*Hubbell* v. *McCulloch*, 47 Barb. 287, 299.) Where land is unimproved and uncultivated, the mere running of a line through the woods, *ex parte*, by one of the owners, so long as such line is not settled upon and mutually adopted by the adjoining owners as a division line, is an immaterial fact. In such a case, until the adjoining owner shows his assent to it, it would amount to a mere expression of the individual opinion of the owner who ran the line. (*Hubbell* v. *McCulloch*, *supra*.) " To constitute a practical location of a line or a lot requires the mutual act and acquiescence of the parties." (*Corning* v. *Troy Iron & Nail Factory*, 44 N. Y. 577, 595.) The law has been well settled as to what constitutes practical location and acquiescence therein since the early case of *Adams* v. *Rockwell* (16 Wend. 285). There the court said that in the absence

of convincing proof of an express agreement made between the owners of the adjoining lands, deliberately settling the line between them and proof of an acquiescence therein for a considerable time, " it should be as clearly, distinctly and satisfactorily shown, that the party claiming has had possession of the lands claimed, up to a certain, visible, known line, with the express knowledge and assent of the owner of the adjoining land, and his acquiescence in such possession, adverse to, and in defiance of his rights — and this for a considerable time." In the case of *Adams* v. *Rockwell* (*supra*) the holding, as expressed in the headnote, was as follows: " Where lands are described in a deed conveying the same, clearly and distinctly by courses and distances, so that upon actual survey the true location of the tract can be ascertained with absolute certainty, the owner may assert his title to hold according to the true boundaries of his lands, notwithstanding that an encroachment has been made upon him by the owner of an adjoining tract, a line maintained in pursuance of such encroachment, recognized by the party encroached upon, and acquiesced in by him for a period of eleven years, if the lands in dispute are in a state of nature, *i. e.*, covered with timber, and no other occupation has been had of them than the occasional cutting down of trees and drawing away of timber." It has also been held to be a prerequisite to the establishment of a practical location that there should be at that time a disputed, indefinite or uncertain boundary line between adjoining owners. An agreement by parol to establish a new line, where the boundary was not indefinite or uncertain, would be void under the Statute of Frauds. (See Real Prop. Law, § 242.) When a disputed or uncertain line is fixed by practical location, it is binding not by way of transfer of title but by way of estoppel. (*Vosburgh* v. *Teator*, 32 N. Y. 561; *Terry* v. *Chandler*, 16 id. 354; *Baldwin* v. *Brown*, Id. 359; *Hinkley* v. *Crouse*, 125 id. 730; *Coon* v. *Smith*, 29 id. 392, 398; *Sweet* v. *Warner*, 14 N. Y. St. Repr. 312.)

The principles of practical location cannot be invoked by the plaintiff under the evidence in this case. There was no claim that there ever was a dispute as to this boundary line until the beginning of this action. The reverse is conceded. The survey made in 1868 is an immaterial fact so far as establishing practical location is concerned. It was made for a person who was not privy to either of the parties to this suit. There is not the slightest proof that the defendant or his privies ever assented expressly or impliedly to any practical location. In 1911 the owner of the lands leased by defendant Warner was present during a portion of the time when the plaintiff had his survey made, but he had

nothing to do with having it made. He was apparently a mere spectator. There is no proof that any dispute arose between them at the time. There is no proof that he knew at that time that the real line was as claimed by him now. The plaintiff's lands were timber lands, unfenced, unoccupied and unused. There was no certain, visible, known line. Upon actual survey the true location can be ascertained apparently with absolute certainty. There is not the slightest room for the application of the doctrine of estoppel in aid of the plaintiff. Such acquiescence as has existed has not been shown to have done the slightest injury to the plaintiff. There was no evidence to submit to the jury that justified the submission to it of any question of practical location.

The judgment and order should be reversed and a new trial granted, with costs to appellants to abide the event.

All concur.

Judgment and order reversed on the law and facts and new trial granted, with costs to the appellants to abide the event.